51 So.2d 585

**CALUMET REFINING CO. v. GREAT NAT. OIL CORP.**

No. 39704.

March 19, 1951.

W. S. Waller, W. M. Phillips, Shreveport, for defendant-appellant.

Browne, Browne & Bodenheimer, Shreveport, for plaintiff-appellee.

HAMITER, Justice.

The Calumet Refining Company instituted this suit on an open account to recover for oil products, such as asphalt and fuel oil, allegedly sold to the defendant, Great National Oil Corporation, between May 4, 1948 and November 16, 1948, and for which there is a balance owing of $4,895.44.

Answering, defendant denied the alleged indebtedness. In reconvention, it prayed for a judgment in the amount of $5,952.50, averring that such sum is due it as a commission in locating for plaintiff certain crude oil which the latter subsequently purchased.

The trial of the case concerned principally the reconventional demand, the defendant, at the commencement thereof, having admitted the correctness of the account set forth in plaintiff's petition.

After the trial's completion the district court rendered a judgment in favor of plaintiff for $4,895.44, with legal interest thereon from judicial demand. But it rejected the reconventional demand, holding, as the assigned written reasons for judgment disclose, that the defendant had failed to discharge the burden of proving such demand.

On this appeal, obtained and perfected by defendant, there is presented for review only that part of the judgment which rejected the reconventional demand.

For a number of years, according to the record, both appellant and appellee have engaged in the business of oil refining; and occasionally, during that period, they purchased from each other certain oil products. Additionally, appellant, for several years, has marketed crude oil on a brokerage basis.

During or shortly before the month of August, 1948, appellant's vice-president, Mr. Biglane, telephoned to a Mr. Henegan, the attorney for Justiss-Mears Oil Company (a producer) of Jena, Louisiana, and inquired whether that company could supply crude oil for appellee's refinery, of its desire and need for which Biglane had knowledge. To the inquiry he received an affirmative answer, and he so informed appellee's manager, Mr. Jester. A few days thereafter Jester went to Jena and arranged with the manager of Justiss-Mears Oil Company to purchase some crude oil; however, no agreement was entered into respecting a definite quantity to be taken In keeping with the arrangement appellee purchased and received between August,

1948 and February, 1949, both months inclusive, crude oil totaling 23,809.99 barrels.

For so locating the oil and informing appellee of it appellant claims a brokerage commission of $5,952.50, the amount for which judgment in reconvention is asked. This sum represents twenty-five cents on each of the barrels (23,809.99) obtained by appellee and is, according to appellant, the customary minimum commission.

In urging its reconventional demand appellant admits that appellee never agreed to pay any specific commission for the location of the crude oil. Its position, as we appreciate it, is that an implied agreement to pay some commission resulted when Biglane, during the day of or the day following his conversation with Henegan, stated to Jester over the telephone that a commission would be charged and thereafter, without protesting the statement, appellee purchased and accepted the oil. To this effect is the testimony of Biglane and that of another of appellant's officials.

Jester, appellee's manager, denies emphatically that there ever existed, either expressly or impliedly, an agreement to pay a commission. He declares that Biglane initially, immediately after locating the crude oil, remarked over the telephone as follows: "We should charge you some commission for locating that crude, but we will not because we want to buy some gas-oil from you this winter." Further, his testimony is that the matter of appellant's claiming a commission on the pur-

chase of crude oil from Justiss-Mears Oil Company arose in April or May, 1949, and only after his company had sought to collect the indebtedness due it by appellant.

Biglane concedes his having made to Jester the mentioned remark and proposal to buy gas-oil. He insists, however, that his proposal was withdrawn, before appellee's taking of the crude oil commenced, because of Jester's refusal to agree on a price for the gas-oil lower than that charged to consumers.

From the foregoing it is noticed that the evidence is highly conflicting with respect to the principal question presented here of whether or not there existed an implied agreement that appellee would pay a commission for appellant's locating the crude oil. In view of this conflict, as well as of the hereinafter related circumstances established by the record and which appear to militate against appellant's position, we are unable to conclude that the district judge erred in holding that appellant failed to discharge the burden which it carried of proving the reconventional demand. According to the record appellee received the crude oil from Justiss-Mears Oil Company continually from August, 1948 to February, 1949, and at no time during that period did appellant request payment of a commission or even obtain figures as to the amount of oil being purchased. The commission was not demanded until about April, 1949, and after appellant had received a letter from appellee's attorney

threatening suit on its indebtedness. Also, the McMillan Oil Company obtained some crude oil from Justiss-Mears Oil Company, through appellant's efforts, without paying to appellant a commission. Finally, appellant, previous to the commencement of the disputed matter, located other crude oil for appellee and charged it no commission for the service or favor.

For the reasons assigned the judgment appealed from is affirmed.